[Cite as *In re R.A.H.*, 2015-Ohio-3342.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 101936**

# IN RE: R.A.H., JR.
## A Minor Child

---

## JUDGMENT:
### AFFIRMED IN PART, AND
### VACATED IN PART

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. DL 14106318

**BEFORE:** Blackmon, J., Boyle, P.J., and Laster Mays, J.

**RELEASED AND JOURNALIZED:** August 20, 2015

**ATTORNEYS FOR APPELLANT**

Timothy Young
Ohio Public Defender

By: Brooke M. Burns
Assistant State Public Defender
250 East Broad Street
Suite 1400
Columbus, Ohio 43215


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

By: Kevin Bringman
Assistant Prosecuting Attorney
1200 Ontario Street
9th Floor
Cleveland, Ohio 44113

PATRICIA ANN BLACKMON, J.:

{¶1} Appellant R.A.H., Jr. ("R.H.") appeals the judgment by the juvenile court finding him delinquent by reason of committing rape and gross sexual imposition and assigns the following four errors for our review:

I. The Cuyahoga County Juvenile Court violated R.H., Jr.'s right to due process of law when it adjudicated him delinquent of gross sexual imposition when no evidence was presented to demonstrate that R.H. touched [H.Y.]'s erogenous zones apart from the evidence presented to prove rape, or that he did so for purposes of sexual arousal or gratification.

II. The Cuyahoga County Juvenile Court committed plain error when it adjudicated R.H. delinquent of two counts of rape, in violation of R.C. 2907.02(A)(1)(b) and 2907.02(A)(2) when the elements of each offense were accomplished by a single act.

III. The Cuyahoga County Juvenile Court erred when it classified R.H. as a tier I juvenile offender registrant because R.C. 2152.83(A) violates the Due Process and Equal Protection Clauses of the United States and Ohio Constitutions.

IV. R.H. was denied the effective assistance of counsel, in violation of the Sixth and Fourteenth Amendments of the United States Constitution and Article I, Section 10 of the Ohio Constitution.

{¶2} Having reviewed the record and pertinent law, we vacate R.H.'s gross sexual imposition conviction but affirm the adjudication as to the rape counts and the sexual offender classification. The apposite facts follow.

{¶3} A complaint was filed in the juvenile court against R.H. for one count of gross sexual imposition and two counts of rape. R.H. refused to enter a plea; therefore,

the matter proceeded to the adjudicatory and dispositional hearings before the trial court where the following evidence was presented.

{¶4} On October 27, 2013, the mother of H.Y. dropped off 12-year old H.Y. at her paternal grandmother's home located on Kennedy Avenue in Cleveland, Ohio, in order for her to spend the weekend with her father. The child had a distant relationship with her father and had not seen him, or his side of the family, for at least several years. However, the father had been begging the child's maternal grandmother to be able to visit the child. The child's mother allowed the visitation as long as the father stayed with the child and did not leave the child alone in the father's family's presence.

{¶5} On October 28, 2013, the grandmother had a family party. H.Y. slept on the couch in the living room with her younger female cousin. Another cousin slept on another couch. According to H.Y., she was asleep on her stomach with her hands above her head when R.H., her 16-year old cousin, came downstairs to use the bathroom. She said the light in the bathroom woke her up. She stated that R.H. approached her on the couch and held down her arms with one hand, while the other hand went inside her pink leggings and underwear and she felt R.H. insert his finger in her "front private part," which she explained was the part of the body from which she urinated. H.Y. stated she was able to kick her cousin Samaria's legs to wake her up. R.H. then told her if she told anyone he would "kill her" and went back upstairs. H.Y. told her cousin Samaria what had happened. They then went back to sleep.

**{¶6}** The next morning, H.Y. told a couple of other cousins what had happened and eventually, her father heard what had occurred. A family meeting was assembled in the dining room, which included H.Y., R.H., her father, grandmother, and aunts. H.Y. accused R.H. of touching her, and R.H. denied the accusation.

**{¶7}** H.Y.'s mother was not told until Monday morning what had occurred. She immediately called the police. Because of her emotional state, the police advised her to meet them with the child at a nearby gas station. After taking the child's statement, the police advised the mother to take her to the emergency room.

**{¶8}** The sex abuse nurse examiner ("SANE") at Hillcrest Hospital testified that the child had told her that her cousin had put his hands between her legs and buttocks while she lied on her stomach and restrained her arms above her head. She stated that he pulled her leggings and underwear down and touched her. The nurse said that when the child said that the cousin touched inside, she interpreted that to mean the cousin penetrated the child's vagina. The nurse said that the area that was red and swollen in H.Y.'s vagina was consistent with being penetrated from behind like the child had told her.

**{¶9}** R.H. testified in his own behalf and denied assaulting his cousin. He presented the testimony of his mother, cousin, and family friend who stated that based on the sleeping arrangements, there was no way that R.H. could have gone downstairs after going to bed without them knowing. His sister testified that she was at the house the next day and that H.Y. seemed happy.

**{¶10}** The trial court found R.H. delinquent of all counts. The trial court ordered a six-month commitment for the gross sexual imposition and a commitment for 12 months for each of the rape counts. The trial court then suspended the commitments imposed and placed him on community control for two years.

## Insufficient Evidence

**{¶11}** In his first assigned error, R.H. argues that the evidence was insufficient to support an adjudication for gross sexual imposition because no evidence was presented that he touched the child for sexual arousal or gratification separate from the contact that constituted rape. We agree.

**{¶12}** Crim.R. 29 mandates that the trial court issue a judgment of acquittal where the prosecution's evidence is insufficient to sustain a conviction for the offense. *Cleveland v. Pate*, 8th Dist. Cuyahoga No. 99321, 2013-Ohio-5571. Crim.R. 29(A) and sufficiency of evidence review require the same analysis. *State v. Mitchell*, 8th Dist. Cuyahoga No. 95095, 2011-Ohio-1241, citing *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, 847 N.E.2d 386. A challenge to the sufficiency of the evidence supporting a conviction requires the court to determine whether the prosecution has met its burden of production at trial. *State v. Givan*, 8th Dist. Cuyahoga No. 94609, 2011-Ohio-100, citing *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541.

**{¶13}** The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential

elements of the crime proven beyond a reasonable doubt. *State v. Vickers*, 8th Dist. Cuyahoga No. 97365, 2013-Ohio-1337, citing *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶14} R.C. 2907.05(A)(4) defines gross sexual imposition as:

(A) No person shall have sexual contact with another, not the spouse of the offender * * * when any of the following applies:

* * *

(4) The other person, or one of the other persons, is less than thirteen years

of age, whether or not the offender knows the age of that person. * * *.

{¶15} It is undisputed that the victim was 12 years old, therefore, the requirement that the victim be under 13 years of age has been met. However, R.H. claims there was no evidence that "sexual contact" was committed separate from the rape. R.C. 2907.01(B) defines "sexual contact" as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." The complaint for gross sexual imposition is based on "R.H." rubbing the child's genital area, not inserting his finger into her vagina. However, the victim at trial did not testify that R.H. rubbed her vaginal area; she stated that he stuck his finger inside her privates. She testified as follows:

Prosecutor:     After he grabbed your hands, what happened?

Victim:     Next he went inside my pants and touched me.

Prosecutor:     Okay.   How did he do that?

Victim:              He went in my pants.

Prosecutor:          Okay.   Do you remember what kind of pants you were wearing?

Victim:              I was wearing pink leggings.

Prosecutor:          And you were wearing underwear?

Victim:              Yeah.

Prosecutor:          Okay.   Did he touch you at all over —

Defense:             Objection.   Leading.

Court:         Sustained.

Prosecutor:          How did he first touch you?

Victim:              He went inside my clothes.

Prosecutor:          And where did he touch you first?

Victim:              Inside my private part.

Prosecutor:          What did he touch you with?

Victim:              His hand.

Prosecutor:          Okay.   Do you know what part of his hand?

Victim:              His finger.   * * *

Prosecutor:          Where did he first grab you?

Victim:              I really don't understand what you're trying to say.

Prosecutor:          Okay.   Did he put his hand —

Defense:             Objection.   Leading.

Court:          Sustained.

Prosecutor:          [H.Y.] can you tell us what happened when he touched you?

Victim:          Yeah.

Prosecutor:          Okay.   Where did he touch you?

Victim:          My front private part.

Prosecutor:          Okay. Do you know another name for your front private part?

Victim:          I don't call it anything else.

Prosecutor:          Okay.   What is that private part?   What do you do with that front private part?

Victim:          Pee. * * *

Prosecutor:          [H.Y.], how many times did he touch you?

Victim:          Once.
Prosecutor:          One time overall?

Victim:          Hm-hmm.

Tr. 65-67.

{¶16} Thus, according to the victim, R.H. touched her once inside of her vagina. There was no rubbing or other touching that occurred.   Officer Sabo testified that when he questioned the child, she told him that R.H. had "rubbed her vaginal area outside of her underwear and then inserted his hand inside her underwear and placed his fingers inside of her."   Although the trial court found this to be admissible because it was an excited utterance, the child's statement to the officer   was testimonial because the officer

asked the question solely for the purpose of investigating the criminal activity because there was no ongoing emergency; therefore, the officer's testimony as to what the child told him was in violation of the confrontation clause and inadmissible. *State v. Siler*, 116 Ohio St.3d 39, 2007-Ohio-5637, 878 N.E.2d 534 (children's statements to police are testimonial in circumstances that indicate that no ongoing emergency existed and that the primary purpose of an interrogation was to establish past events potentially related to later criminal prosecution.) Accordingly, R.H.'s first assigned error is sustained and his gross sexual imposition adjudication vacated.

## Allied Offenses of Similar Import

In his second assigned error, R.H. argues the trial court erred by failing to merge the two rape counts at sentencing because they were allied offenses of similar import. We disagree.

{¶17} R.H. was indicted for two separate rape counts, one for raping a child under the age of 13, and one for using force when committing the rape. The evidence supported both rape adjudications. There is no dispute the victim was 12 years old, and the victim testified that R.H. held her hands down over her head while committing the rape. However, both rape counts were committed by R.H. digitally penetrating the child.

R.H. contends this required the trial court to merge the offenses because they were allied offenses.

{¶18} This court in *In re A.G.*, 8th Dist. Cuyahoga No. 101010, 2014-Ohio-4927, which is currently pending before the Ohio Supreme Court, held that juvenile offenders are not entitled to the same allied offenses of similar conduct analysis under R.C. 2941.25, used for adult offenders because technically, a juvenile is not being convicted of a criminal offense. Instead, juveniles are protected against double jeopardy solely by use of the *Blockburger* test. We held as follows:

> [U]nlike *Blockburger* [*v. United States*], 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 [1932], which mandates that each offense require proof of an element that the other does not in order to find that two offenses are not the same offense, under R.C. 2941.25 all that is required to find that two offenses are allied and should merge is whether it is possible to commit one offense and commit the other with the same conduct. Therefore, R.C. 2941.25 provides greater protection against double jeopardy violations than that prescribed in *Blockburger*. * * *

> Still, the United States Supreme Court and the Ohio Supreme Court agree that the Double Jeopardy provisions of the United States Constitution and the Ohio Constitution apply to both juveniles and adults alike. While the Supreme Courts are in agreement, *Breed v. Jones*, 421 U.S. 519, 95 S.Ct. 1779, 44 L.E.2d 346 (1975); *see In re Cross*, 96 Ohio St.3d 328, 2002-Ohio-4183, 774 N.E.2d 258, ¶ 23 (recognizing that double jeopardy protections apply in juvenile delinquency proceedings), this does not mean that juveniles are constitutionally entitled to the same greater statutory protections afforded adults when it comes to consideration of allied offenses for double jeopardy purposes. * * *.

As previously noted, in order to determine whether offenses should merge as the same offense under *Blockburger*, an appellate court is to examine the elements of multiple offenses and decide whether each offense requires proof of an element that the other does not. Courts are to examine the elements of each offense without regard to the evidence to be introduced at trial. If two offenses require proof of a separate element, then the two offenses are not the same and should not be merged.

*Id.* at ¶ 18, 23, 25.

{¶19} In the instant case, the rape charges each require a separate element that the other does not. Rape pursuant to R.C. 2907.02(A)(1)(b) requires that the victim be less than 13 years of age, which is not an element of rape pursuant to R.C. 2907.02(A)(2). R.C. 2907.02(A)(2) requires that force be used in the commission of the rape, while that element is not required in R.C. 2907.02(A)(1)(b). Pursuant to the *Blockburger* test, because each rape offense required an element that the other did not, the two offenses are not the same and do not merge. Accordingly, R.H.'s second assigned error is overruled.

## Sex Offender Classification

{¶20} In his third assigned error, R.H. argues that his mandatory classification as a juvenile sex offender registrant was unconstitutional based on equal protection, due process, and jurisdictional grounds. We disagree.

{¶21} As an initial matter, we note "[f]ailure to raise at the trial court level the issue of the constitutionality of a statute or its application, which issue is apparent at the time of trial, constitutes a waiver of such issue." *In re I.A.*, 2d Dist. Montgomery No. 25078, 2012-Ohio-4973, ¶ 4, quoting *State v. Awan*, 22 Ohio St.3d 120, 489 N.E.2d 277 (1986), syllabus. R.H. failed to raise his constitutional challenges regarding R.C.

2152.83 to the juvenile court, and therefore has waived his arguments on appeal. However, "[t]he waiver doctrine * * * is discretionary." *In re M.D.*, 38 Ohio St.3d 149, 527 N.E.2d 286 (1988), syllabus. Even in a case of clear waiver, an appellate court may "consider constitutional challenges to the application of statutes in specific cases of plain error or where the rights and interests involved may warrant it." *Id.*; *see In re J.F.*, 178 Ohio App.3d 702, 2008-Ohio-4325, 900 N.E.2d 204, ¶ 84 (2d Dist.). We, therefore, will review the matter for plain error. In order to find plain error, it must be determined that, but for the error, the outcome of the proceeding clearly would have been different. *State v. Hostacky*, 8th Dist. Cuyahoga No. 100003, 2014-Ohio-2975, citing *State v. Long*, 53 Ohio St.2d 91, 96-97, 372 N.E.2d 804 (1978). For the following reasons, we find no plain error occurred.

{¶22} The Equal Protection Clause of the United States Constitution states that no state shall deny to any person the equal protection of the laws. It prevents a state from treating people differently under its laws on an arbitrary basis. *Harper v. Virginia State Bd. of Elections*, 383 U.S. 663, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1966). Where the challenger does not raise a suspect classification or a fundamental right, the test provides that class distinctions among individuals are permissible if they bear some rational relationship to a legitimate governmental objective. *Id.*

{¶23} R.H. contends that R.C. 2152.83(A)(1) violates his right to equal protection because it requires juveniles who were 16 or 17 years of age when they committed the sex

offense to be classified as a sex offender,[1] while for younger juveniles, the classification is discretionary with the trial court.

{¶24} The Seventh District Court of Appeals addressed and rejected this exact same argument in *In re: M.R.*, 7th Dist. Jefferson No. 13 JE 30, 2014-Ohio-2623.[2] Relying on decisions from the third and fourth districts, the court in *M.R.* held that due to the legislative concern for sex offender recidivism and public safety, the legislature rationally concluded that the lower the age of the offender, the reduced likelihood of recidivism, thereby granting the juvenile court discretion in determining whether a sex offender classification is necessary with younger offenders. *Id.* at ¶ 39 and 40, citing to *In re J.M.*, 3d Dist. Wyandot No. 16-12-01, 2012-Ohio-4109, ¶ 32. *See also In re Forbess*, 3d Dist. Auglaize No. 2-09-20, 2010-Ohio-2826, ¶ 56; *In re C.P.*, 4th Dist. Athens No. 09CA41, 2010-Ohio-1484, ¶ 25, *reversed on other grounds*, *In re C.P.*, 131 Ohio St.3d 513, 2012-Ohio-1446, 967 N.E.2d 729. The court in *M.R.* went on to explain as follows:

> Appellant essentially states there is no scientific evidence that a 16 year old is more likely to reoffend than a 14 or 15 year old. However, this validly enacted statute is presumed constitutional, and the state need not present

---

[1]The classification as a sex offender is mandatory, but the assigned tier level is discretionary with the trial court. R.C. 2152.83(A)(2).

[2]The Ohio Supreme Court accepted this decision for review, but stayed briefing until it issues its decision in *In re D.S.*, 5th Dist. Licking No. 13-CA-58, 2014-Ohio-867. *See In re M.R.*, 140 Ohio St.3d 1521, 2014-Ohio-5251, 20 N.E.3d 729. Oral argument for the *D.S.* case was held on March 25, 2015; therefore, the Ohio Supreme Court's decision should be forthcoming soon. *D.S.* involved a delinquent who was 14 years old; therefore, it is unclear how this decision will affect cases where the sex offender classification is mandatory for 16- and 17-year old delinquents.

such evidence. *See* [*Ohio Apartment Assn. v.*] *Levin*, 127 Ohio St.3d 76, [936 N.E.2d 919, 2010-Ohio-4414] at ¶ 34. Rather, the court is to evaluate whether the line drawn bears any conceivable rational relation to the state's legitimate goals. [*State v.*] *Thompkins*, 75 Ohio St.3d 558, 561, [664 N.E.2d 926 (1996)].

The state cites many laws that draw age-based lines for juveniles based upon legislative decisions. *See*, e.g., R.C. 5139.05(A) (10 year old can be held in DYS custody for certain offenses, but those 9 and under cannot); R.C. 2152.10 (discretionary bindover for juveniles 14 and over but not for those 13 and under; mandatory bindover for juveniles 16 and 17 for certain offenses but not for those 14 and 15 unless certain priors; and no mandatory bindover for those under 16 for category 2 offenses). Legislatures regularly classify juveniles based upon age; this is the function of the legislature.

The purpose of sex offender registration is ultimately to protect the public. *See* R.C. 2950.02 (including by exchanging information between agencies). As the state argues, it is a core premise of the juvenile system that as a juvenile matures, he becomes more responsible and thus more accountability can be expected. The state urges that the prohibition on classifying those 13 and under, the discretionary classification of those 14 and 15, and the mandatory classification of sex offenders who are 16 and 17 evinces a rational common sense adoption of the theory that younger children are less culpable, less accountable, and less dangerous. It is not unreasonable to act under the belief that it is easier to reform, retrain, and rehabilitate a younger child than an older child. As the state points out, an older juvenile will also "age out" of the system sooner than a younger juvenile and thus there is less time available to provide the older juvenile with rehabilitative services, making registration for tracking and agency coordination purposes more desirable.

As appellant's studies suggest, juvenile sex offenders are more responsive to treatment than adult sex offenders. And, this is reflected in the deferred classification until release after treatment in the secure facility, the review at final disposition, and the ability to seek declassification three years later and again thereafter. It is not irrational for legislators to conclude that the farther a juvenile is from adulthood, the more responsive he will be to treatment. From this, the legislature could reason that the lower the age of the offender, the reduced likelihood of recidivism and thus the decreased need for tracking.

*Id.* at ¶ 42-45.

**{¶25}** We agree with the above sound analysis and conclude that there is a rational basis for making the sexual classification of 16- and 17-year-old sex offenders mandatory. Thus, we conclude the statute does not violate the Equal Protection Clause in this regard.

**{¶26}** R.H. argues that R.C. 2152.83 also violates his due process rights because it creates a nonrebuttable presumption that the juvenile who committed the crime automatically poses a future risk to the community.

**{¶27}** The constitutional rights which prohibit a state from depriving a person of "life, liberty, or property, without due process of law" are derived from both the federal and Ohio Constitutions. *See* Fourteenth Amendment, U.S. Constitution, and Section 1, Article I of the Ohio Constitution. *See also State v. Hayden*, 96 Ohio St.3d 211, 2002-Ohio-4169, 773 N.E.2d 502, ¶ 6. Procedural due process requires that the government provide constitutionally adequate procedures before depriving individuals of a protected liberty interest. *Cleveland Bd. of Edn. v. Loudermill*, 470 U.S. 532, 541, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985).

**{¶28}** We conclude the statute does not violate the due process clause. The trial court has discretion in deciding which tier applies to the 16- or 17-year-old sex offender, who can present evidence at a hearing in support of a lower tier. R.C. 2152.83(A)(2). Moreover, the classification can be reduced once the juvenile completes disposition (R.C. 2152.84(A)(1), (2)(c)) and can be eliminated three years after final disposition. R.C.

2152.85(A)(1)-(3), (B)(1)-(3). Accordingly, we conclude that the mandatory provision does not violate the due process clause.

{¶29} Finally, R.H. asserts that the trial court erred by imposing a sanction that will extend beyond the age jurisdiction of the juvenile court.

{¶30} The Eleventh District Court of Appeals recently considered and rejected this same argument. We agree with the Eleventh District's analysis and incorporate it as follows:

> [B]oth R.C. 2152.22(A) and R.C. 2152.83(E) specifically exempt sex offender classification proceedings from the general rule that dispositions end when the juvenile turns 21. Dispositional orders of Ohio juvenile courts generally continue "for a period that is designated by the court in its order, until terminated or modified by the court or until the child attains twenty-one years of age." R.C. 2152.22(A). However, this general rule yields when another "provision of law specifies a different duration for a dispositional order." *Id.* Such provisions of law are implicated in sex offender registration cases. Dispositional orders requiring juvenile sex offenders to register "shall remain in effect for the period of time specified in section 2950.07 of the Revised Code [subject to certain provisions allowing for modification and termination]." R.C. 2152.83(E). Furthermore, "[t]he child's attainment of eighteen or twenty-one years of age does not affect or terminate the order, and the order remains in effect for the period of time described in this division." *Id.* Thus, a juvenile classified as a Tier I sex offender, who is subject to registration for 10 years under R.C. 2950.07(B)(3), must register for 10 years — even if such registration period continues beyond the juvenile's 21st birthday — unless the disposition is modified or terminated.
>
> Second, we note that [appellant's] reliance on *State v. Williams*, 129 Ohio St.3d 344, 2011-Ohio-3374, 952 N.E.2d 1108, is misplaced. S.B. 10 took effect on January 1, 2008. Among other things, it created a new tier system with additional reporting requirements and provided for automatic classification of offenders based on the offense committed. *Williams* held that S.B. 10, because it has punitive elements, is unconstitutional when applied retroactively to sex offenders whose crimes were committed before that law took effect. *See Id.* at ¶ 21. *Williams* involved an adult defendant

and has no relevance with regard to whether a juvenile court may impose a classification that requires a juvenile defendant to continue sex offender registration after the age of 21. Furthermore, [appellant's] Tier I sex offender classification is based on an offense that occurred during the summer of 2008. Thus, there is no issue regarding retroactive punishment or ex post facto laws in this case.

Third, [appellant's] reliance on *In re C.P.*, 131 Ohio St.3d 513, 2012-Ohio-1446, 967 N.E.2d 729, is also misplaced.

In *In re C.P.*, the Ohio Supreme Court held that R.C. 2152.86 was unconstitutional for two reasons. The Court held that classification requiring lifetime registration and disclosure of sex offender status in a public, internet accessible database amounted to cruel and unusual punishment when applied to juveniles. *Id.* at ¶ 86. [Appellant] is not subject to lifetime registration in a public database. The Court further held that the procedure specified in R.C. 2152.86 — i.e., the automatic imposition of sex offender registration requirements without the benefit of a judicial hearing — violated due process. [Appellant] was not subject to automatic classification. [Appellant] was classified by a judge following a hearing, and he also had the benefit of an appeal that resulted in his reclassification to a lower tier.

On the facts before us, we are guided by the decision in *State ex rel. N.A. v. Cross*, 125 Ohio St.3d 6, 2010-Ohio-1471, 925 N.E.2d 614. In that case, [the appellant] was adjudicated delinquent for two counts of rape that occurred when he was 16 years old. *Id.* at ¶ 2. The appellate court reversed and remanded for rehearing, as the adjudicatory hearing was not recorded in compliance with Juv.R. 37(A). *Id.* at ¶ 3. The juvenile court commenced the adjudicatory rehearing before [the appellant] reached 21 years of age, but continued it until after his 21st birthday. *Id.* at ¶ 4. [Appellant] sought a writ of prohibition on the basis that the juvenile court had no power to conduct a trial on the issue of his delinquency after he reached the age of 21. *Id.* at ¶ 5. The court of appeals dismissed [appellant's] petition, and [appellant] appealed to the Supreme Court of Ohio. *Id.* at ¶ 5-6.

The Supreme Court affirmed the judgment of the court of appeals. *Id.* at ¶ 15. It noted that the juvenile court's jurisdiction was premised on the fact that [the appellant] had committed the rapes prior to turning 18 years old. *Id.* at ¶10-11. Significant to this case, the Supreme Court made the following observation, at ¶ 13:

"Moreover, * * * even though [appellant] is now over 21 years old, the delinquency proceeding is still important because if he is adjudicated a delinquent child based on the rape offenses, [appellant] would still be subject to the juvenile-offender-registration provisions. *See* R.C. 2152.82(C) (if an order classifying a child as a juvenile-offender registrant is issued, 'the child's attainment of eighteen or twenty-one years of age does not affect or terminate the order'); *see also* R.C. 2151.23(A)(15) (juvenile court has exclusive original jurisdiction to 'conduct the hearings, and to make the determinations, adjudications, and orders authorized or required under sections 2152.82 to 2152.86 (* * *) of the Revised Code regarding a   child who has been adjudicated a delinquent child')."

Admittedly, *State ex rel. N.A.* was a writ proceeding, not an appeal, and was decided before the Ohio Supreme Court found the provisions of S.B. 10 punitive in *Williams*, *supra*, at ¶ 20. Nonetheless, *N.A.* indicates there is no per se prohibition against Ohio juvenile courts imposing a registration requirement that extends beyond a person's attainment of age 21. *State ex rel. N.A., supra*, at ¶ 12-13. *In re C.P.* contains an extensive analysis concerning the manner in which former R.C. 2152.86 violated due process rights — i.e., by undercutting the procedural safeguards otherwise inherent in the juvenile justice system. *In re C.P., supra,* at ¶ 70-85.

*In re N.Z.*, 11th Dist. Lake No. 2012-L-100, 2014-Ohio-157, ¶ 38-44.

**{¶31}** Based on the above analysis, we conclude the trial court's classification of R.H. did not violate his constitutional rights.   R.H.'s third assigned error is overruled.

### Ineffective Assistance of Counsel

**{¶32}** In his fourth assigned error, R.H. argues that his counsel was ineffective for failing to object to the juvenile court's failure to merge his adjudications for rape and for failing to object to the trial court's classification of R.H. as a sexual offender based on an unconstitutional statute.

**{¶33}** To succeed on a claim of ineffective assistance, a defendant must establish that counsel's performance was deficient and that the defendant was prejudiced by the

deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). Counsel will only be considered deficient if his or her conduct fell below an objective standard of reasonableness. *Strickland* at 688.

{¶34} When reviewing counsel's performance, this court must be highly deferential and "must indulge a strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance." *Id*. at 689. To establish resulting prejudice, a defendant must show that the outcome of the proceedings would have been different but for counsel's deficient performance. *Id*. at 694.

{¶35} As we held above, the rape counts do not merge and R.C. 2152.82 is not unconstitutional. Thus, the outcome of the proceedings would not have been different if counsel had raised these issues. R.H.'s fourth assigned error is overruled.

{¶36} Judgment affirmed in part and vacated in part.

It is ordered that appellant and appellee share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the Cuyahoga County Juvenile Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
PATRICIA ANN BLACKMON, JUDGE

MARY J. BOYLE, P.J., and
ANITA LASTER MAYS, J., CONCUR