[Cite as *In re D.F.*, 2022-Ohio-3436.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
JACKSON COUNTY

| | | |
|---|---|---|
| In the Matter of: | : | Case No. 22CA9 |
| D.F. | : | <u>DECISION AND</u><br><u>JUDGMENT ENTRY</u> |

**RELEASED 9/27/2022**
_____

<u>APPEARANCES</u>:

Lauren Hammersmith, Assistant State Public Defender, Office of the Ohio Public Defender, Columbus, Ohio, for appellant.

Justin Lovett, Jackson County Prosecuting Attorney, and William L. Archer, Jr., Special Assistant Jackson County Prosecutor, Jackson, Ohio, for appellee.
_____

Hess, J.

{¶1}    D.F. appeals from a judgment of the Jackson County Court of Common Pleas, Juvenile Division, classifying him as a tier II juvenile offender registrant ("JOR"). D.F. contends that the imposition of registration requirements on him violates his Eighth Amendment right to be free from cruel and unusual punishment, the natural law rights afforded to him under the Ohio Constitution, Article I, Section 1, and his right to due process.  For the reasons which follow, we reject these contentions and affirm the juvenile court's judgment.

I.  PROCEDURAL HISTORY

{¶2}    On August 27, 2020, a complaint was filed which alleged that D.F., d/o/b September 18, 2001, appeared to be a delinquent child because on or about July 1, 2018, when he was 16 years old, he engaged in conduct which would constitute rape in violation of  R.C. 2907.02(A)(1)(b), a first-degree felony if committed by an adult.  The juvenile

court adjudicated him a delinquent child and committed him to the legal custody of the Ohio Department of Youth Services ("DYS") for an indefinite term consisting of a minimum period of 12 months and a maximum period not to exceed his 21st birthday. The juvenile court also classified him as a tier III JOR, but we reversed that part of the disposition order and vacated the classification because pursuant to R.C. 2152.83(A)(1), the juvenile court had to wait until D.F.'s release from DYS to classify him as a JOR. *In re D.F.*, 4th Dist. Jackson No. 21CA5, 2021-Ohio-3109, ¶ 6, 10, 14.

{¶3} On or about March 22, 2022, D.F. was released from DYS. Subsequently, D.F. filed a memorandum opposing classification. D.F. asserted that "imposition of registration" on him would violate several of his constitutional rights. Alternatively, D.F. asserted that the juvenile court should "classify him at the lowest possible level" given his "progress at DYS and that he is a low risk to reoffend." After a hearing, the juvenile court found that D.F. was 17 years old at the time of his offense and that R.C. 2152.83(A)(1) mandated that the court classify him as a JOR, and the court classified him as a tier II JOR.[1]

## II. ASSIGNMENTS OF ERROR

{¶4} D.F. presents three assignments of error:

I.      The imposition of registration on D.F. violates his Eighth Amendment right to be free from cruel and unusual punishment because registering children as sex offenders is barbaric.

II.     The imposition of registration on D.F. violates the natural law rights afforded to him under the Ohio Constitution, Article I, Section 1.

---

[1] D.F. does not challenge the finding that he was 17 at the time of his offense and in fact stated that he was 17 at that time in his memorandum opposing classification. However, we observe that the complaint alleged that D.F. was born on September 18, 2001, and that he committed his offense on or about July 1, 2018. As the complaint indicates, D.F. would have been 16 on July 1, 2018. However, regardless whether D.F. was 16 or 17 at the time of his offense, he was subject to classification as a JOR under R.C. 2152.83(A).

> III.   The imposition of registration on D.F. violates his right to due process because it creates an irrebuttable presumption that he is at a high risk to reoffend.

## III.  STANDARD OF REVIEW

{¶5}   The constitutionality of a statute presents a question of law we review de novo. *Hayslip v. Hanshaw*, 2016-Ohio-3339, 54 N.E.3d 1272, ¶ 27 (4th Dist.). " '[L]aws are entitled to a strong presumption of constitutionality.' " *Ohio Renal Assn. v. Kidney Dialysis Patient Protection Amendment Commt.*, 154 Ohio St.3d 86, 2018-Ohio-3220, 111 N.E.3d 1139, ¶ 26, quoting *Yajnik v. Akron Dept. of Health, Hous. Div.*, 101 Ohio St.3d 106, 2004-Ohio-357, 802 N.E.2d 632, ¶ 16. "A party may challenge a statute as unconstitutional on its face or as applied to a particular set of facts." *Harrold v. Collier*, 107 Ohio St.3d 44, 2005-Ohio-5334, 836 N.E.2d 1165, ¶ 37. "A party asserting a facial challenge to a statute must prove beyond a reasonable doubt 'that no set of circumstances exists under which the act would be valid.' " *Ohio Renal Assn.* at ¶ 26, quoting *Wymsylo v. Bartec, Inc.*, 132 Ohio St.3d 167, 2012-Ohio-2187, 970 N.E.2d 898, ¶ 21. "An as-applied challenge requires the challenger to 'present clear and convincing evidence of the statute's constitutional defect.' " *Id.*, quoting *State ex rel. Ohio Congress of Parents & Teachers v. State Bd. of Edn.*, 111 Ohio St.3d 568, 2006-Ohio-5512, 857 N.E.2d 1148, ¶ 21.

## IV.  STATUTORY SCHEME

{¶6}   "R.C. 2152.82 to 2152.86 and Chapter 2950 delineate Ohio's statutory scheme for juvenile-sex-offender classification and registration." *In re D.S.*, 146 Ohio St.3d 182, 2016-Ohio-1027, 54 N.E.3d 1184, ¶ 13. R.C. 2152.191(A) states that these provisions apply to a child who "is adjudicated a delinquent child for committing a sexually

oriented offense or a child-victim oriented offense, if the child is fourteen years of age or older at the time of committing the offense, and if the child committed the offense on or after January 1, 2002[.]"   Whether the child is subject to mandatory or discretionary classification depends on the specific statutory provision under which the child is subject to classification.

{¶7}   In this case, D.F. was classified as a JOR pursuant to R.C. 2152.83(A)(1), which states:

> The court that adjudicates a child a delinquent child *shall issue* as part of the dispositional order or, if the court commits the child for the delinquent act to the custody of a secure facility, *shall issue* at the time of the child's release from the secure facility *an order that classifies the child a juvenile offender registrant* and specifies that the child has a duty to comply with sections 2950.04, 2950.041, 2950.05, and 2950.06 of the Revised Code if all of the following apply:
>
> (a) The act for which the child is or was adjudicated a delinquent child is a sexually oriented offense or a child-victim oriented offense that the child committed on or after January 1, 2002.
>
> (b) The child was sixteen or seventeen years of age at the time of committing the offense.
>
> (c) The court was not required to classify the child a juvenile offender registrant under section 2152.82 of the Revised Code or as both a juvenile offender registrant and a public registry-qualified juvenile offender registrant under section 2152.86 of the Revised Code.

(Emphasis added.)   R.C. 2152.83(A)(1) makes classification as a JOR mandatory for a child such as D.F. who meets the requirements of that section.   However, the juvenile court has discretion to select the child's tier classification after conducting a hearing for that purpose.   *See* R.C. 2152.83(A)(2) ("the judge shall conduct a hearing * * * to determine whether the child is a tier I sex offender/child-victim offender, a tier II sex offender/child-victim offender, or a tier III sex offender/child-victim offender").

{¶8}  JORs must register personally with the sheriff or sheriff's designee within three days of coming into a county in which the child "resides or temporarily is domiciled for more than three days."  R.C. 2950.04(A)(3)(a).  The duration of the duty to register and frequency with which a JOR must comply with certain address verification requirements varies depending on the JOR's tier classification.   Tier I JORs must register for 10 years, R.C. 2950.07(B)(3), and comply with verification requirements annually, R.C. 2950.06(B)(1).  Tier II JORs must register for 20 years, R.C. 2950.07(B)(2), and comply with verification requirements every 180 days, R.C. 2950.06(B)(2).  Tier III JORs must register for life, R.C. 2950.07(B)(1), and comply with verification requirements every 90 days, R.C. 2950.06(B)(3).  Under R.C. 2152.83(C)(2), the court also has discretion to impose a requirement subjecting a tier III JOR to the victim and community notification provisions of R.C. 2950.10 and 2950.11.  The registration information of JORs is not disseminated on Ohio's public Internet database for sex offenders and child-victim offenders.  *See* R.C. 2950.13(A)(11).

{¶9}  A child classified under R.C. 2152.83(A) has opportunities for reclassification and declassification.  R.C. 2152.84(A)(1) states that "upon completion of the disposition," the judge who classified the child or the judge's successor in office

> shall conduct a hearing to review the effectiveness of the disposition and of any treatment provided for the child, to determine the risks that the child might re-offend, to determine whether the prior classification of the child as a juvenile offender registrant should be continued or terminated as provided under division (A)(2) of this section, and to determine whether its prior determination * * * as to whether the child is a tier I sex offender/child-victim offender, a tier II sex offender/child-victim offender, or a tier III sex offender/child-victim offender should be continued or modified as provided under division (A)(2) of this section.

For tier II or III JORs classified under R.C. 2152.83(A), the judge must enter an order that either continues the child's original tier classification or reduces it to a lower tier. *See* R.C. 2152.84(A)(2)(a)-(c).     For tier I JORs classified under R.C. 2152.83(A), the judge must issue an order that maintains the child's original tier classification since the court cannot increase the child's tier classification or declassify the child at that time. *See* R.C. 2152.84(A)(2)(a)-(c).[2]   Three years after the judge enters the order required by R.C. 2152.84, a JOR may petition the judge for reclassification or declassification.   R.C. 2152.85(A) & (B)(1).  The child may petition the judge a second time three years after the court enters an order deciding the first petition.  R.C. 2152.85(B)(2).  The child may file additional petitions five years after the judge has entered an order deciding the child's most recent petition.  R.C. 2152.85(B)(3).  If the judge issues an order which declassifies the delinquent child, "the order also terminates all prior determinations that the child is a tier I sex offender/child-victim offender, a tier II sex offender/child-victim offender, or a tier III sex offender/child-victim offender, whichever is applicable."  R.C. 2152.85(D).

## V.  CRUEL AND UNUSUAL PUNISHMENT

{¶10} In his first assignment of error, D.F. contends that the "imposition of registration" on him "violates his Eighth Amendment right to be free from cruel and unusual punishment because registering children as sex offenders is barbaric." D.F. asserts that "[t]he Cruel and Unusual Punishments Clause prohibits the imposition of

---

[2] The First District Court of Appeals has held that that R.C. 2152.84, as applied to a tier I JOR classified under R.C. 2152.83(A), violates procedural due process. *In re D.R.*, 2021-Ohio-1797, 173 N.E.3d 103, ¶ 12-14, 16 (1st Dist.), *appeal allowed by* 164 Ohio St.3d 1460, 2021-Ohio-3594, 174 N.E.3d 810. The Fifth District Court of Appeals has held that R.C. 2152.84 does not violate the procedural due process rights of a tier I JOR classified under R.C. 2152.83(A) because there is no substantive due process right to removal of the tier I classification at the completion-of-disposition hearing. *In re N.D.*, 2021-Ohio-4506, 182 N.E.3d 470, ¶ 32, 44 (5th Dist.), *appeal allowed by* 166 Ohio St.3d 1467, 2022-Ohio-1163, 185 N.E.3d 106. Appeals from these decisions are currently pending before the Supreme Court of Ohio.

inherently barbaric punishments under all circumstances" and "allows courts to make a judicial determination as to whether a challenged punishment comports with human dignity." He asserts that courts can consider not only whether a punishment inflicts physical pain but also severe mental pain.

**{¶11}** D.F. maintains that children on the registry are treated as nonhumans and objects to be toyed with and discarded. D.F. claims that life is unbearably difficult "for many on the registry" because registration "is an all-encompassing weight that permeates into every aspect of a child's life, often before they figure out how to navigate the world on their own." D.F. asserts that "[s]cientific studies show that the consequences of life on the registry are so severe and so certain, that many professional organizations across the country are calling for an end to juvenile registration altogether, calling it cruel and abusive." D.F. claims children on the registry experience housing insecurity and homelessness, are excluded from school and denied employment, experience violence and harassment from vigilantes, suffer deteriorated mental health, are at an increased risk of being victims of sexual assault, and are at an increased risk of attempting suicide. D.F. also asserts that family members of children on the registry "experience all the same negative effects as registrants themselves." D.F. claims that he has had difficulty finding housing and work, and he predicts that in the future, he will suffer a multitude of negative consequences due to his registration. He asserts that the "complex web of laws and consequences" surrounding registration "are akin to torturing children, are barbaric, and are therefore unconstitutional."

**{¶12}** The Eighth Amendment to the United States Constitution states: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual

punishments inflicted." This amendment "applies to the states pursuant to the Fourteenth Amendment." *State v. Blair*, 4th Dist. Athens No. 18CA24, 2019-Ohio-2768, ¶ 36. "[U]nder the Eighth Amendment, the State must respect the human attributes even of those who have committed serious crimes." *Graham v. Florida*, 560 U.S. 48, 59, 130 S.Ct. 2011, 176 L.E.2d 825 (2010). "The Cruel and Unusual Punishments Clause prohibits the imposition of inherently barbaric punishments under all circumstances." *Id.* " '[P]unishments of torture,' for example, 'are forbidden.' " *Id.*, quoting *Wilkerson v. Utah*, 99 U.S. 130, 136, 25 L.Ed. 345 (1878). The clause also prohibits "sentences that are disproportionate to the crime committed." *Solem v. Helm*, 463 U.S. 277, 284, 103 S.Ct. 3001, 77 L.E.2d 637 (1983).

{¶13} "[T]he bulk of Eighth Amendment jurisprudence concerns not whether a particular punishment is barbaric, but whether it is disproportionate to the crime." *In re C.P.*, 131 Ohio St.3d 513, 2012-Ohio-1446, 967 N.E.2d 729, ¶ 25. However, in this case D.F. does not make a proportionality challenge; rather, he asserts that registering children as sex offenders is barbaric under all circumstances. Because D.F. was classified as a JOR pursuant to R.C. 2152.83(A) and that provision only applies to children (specifically those who were 16 or 17 at the time of their offense), we interpret his first assignment of error as presenting a facial challenge to R.C. 2152.83(A).

{¶14} We are not persuaded that requiring children to register as sex offenders under R.C. 2152.83(A) is akin to torture. D.F. has not directed us to a single case in which a court has invalidated a duly enacted juvenile sex offender registration statute on the ground that registration of children as sex offenders is akin to torture, barbaric, and

therefore violates the Cruel and Unusual Punishments Clause.  D.F. directs our attention

to the following statement in *C.P.*:

> Here, too, the registration and notification requirements are different from such a penalty for adults. For juveniles, the length of the punishment is extraordinary, and it is imposed at an age at which the character of the offender is not yet fixed.  Registration and notification necessarily involve stigmatization. For a juvenile offender, the stigma of the label of sex offender attaches at the start of his adult life and cannot be shaken. With no other offense is the juvenile's wrongdoing announced to the world. Before a juvenile can even begin his adult life, before he has a chance to live on his own, the world will know of his offense. He will never have a chance to establish a good character in the community. He will be hampered in his education, in his relationships, and in his work life. His potential will be squelched before it has a chance to show itself. A juvenile—one who remains under the authority of the juvenile court and has thus been adjudged redeemable—who is subject to sex-offender notification will have his entire life evaluated through the prism of his juvenile adjudication. It will be a constant cloud, a once-every-three-month reminder to himself and the world that he cannot escape the mistakes of his youth. * * *

*C.P.* at ¶ 45.  *C.P.* considered the constitutionality of R.C. 2152.86, which created "a new

class of juvenile sex-offender registrants"—public-registry-qualified juvenile-offender

registrants ("PRQJORs")—who "are automatically subject to mandatory, lifetime sex-

offender registration and notification requirements, including notification on the Internet."

*Id.* at ¶ 1.  Under a *proportionality review*, *C.P.* held that to the extent that R.C. 2152.86

imposes such requirements on juvenile offenders tried within the juvenile system, the

statute violated the Cruel and Unusual Punishments Clause.  *Id.* at ¶ 1, 25-58.  *C.P.* did

not hold that registering children as sex offenders is barbaric.

{¶15} Although *C.P.* recognized the negative impact of registration and

notification requirements on the lives of juvenile offenders, *id.* at ¶ 45, the requirements

for JORs classified under R.C. 2152.83(A) are decidedly less harsh than the ones for

PRQJORs.  *See id.* at ¶ 12 ("PRQJORs are subject to more stringent registration and

notification requirements than other juvenile-offender registrants"). As previously explained, the juvenile court has discretion to select the child's tier-classification under R.C. 2152.83(A), and the tier determines the duration of the child's registration duties, see R.C. 2950.07(B)(1)-(B)(3). Only tier III JORS are subject to the community and victim notification provisions of R.C. 2950.10 and 2950.11, and only if the court orders that in its discretion. R.C. 2152.83(C)(2). Unlike PRQJORs, JORs do not have their registration information disseminated on Ohio's public Internet database for sex offenders and child-victim offenders. *See* R.C. 2950.13(A)(11).

{¶16} JORs also have opportunities for reclassification and have opportunities for declassification. PRQJORs cannot seek to terminate their registration duties until 25 years after they begin. R.C. 2950.15(B) & (C)(2). In contrast, JORs have an opportunity for reclassification upon the completion of disposition, R.C. 2152.84, and the opportunity for declassification as soon as three years after the completion-of-disposition hearing, R.C. 2152.85(B)(1). Again, a declassification order "terminates all prior determinations that the child is a tier I sex offender/child-victim offender, a tier II sex offender/child-victim offender, or a tier III sex offender/child-victim offender, whichever is applicable." R.C. 2152.85(D). Thus, unlike the PRQJOR statutory scheme, the statutory scheme for JORs classified under R.C. 2152.83(A) gives the juvenile judge a role in determining how dangerous a child offender might be or what level of registration or notification would be adequate to preserve the safety of the public and gives JORs the opportunity to shake the label of sex offender and gain a fresh start much sooner than PRQJORs. *See generally C.P.* at ¶ 45, 48 (explaining that a PRQJOR "released at 18 would have to wait until age 43 at the earliest to gain a fresh start" and that "the PRQJOR statutory scheme

gives the juvenile judge no role in determining how dangerous a child offender might be or what level of registration or notification would be adequate to preserve the safety of the public").

{¶17} D.F. has not proven beyond a reasonable doubt that no set of circumstances exists under which R.C. 2152.83(A) would be valid. Specifically, he has not shown that registering children as sex offenders under that provision is barbaric and therefore violates the Cruel and Unusual Punishments Clause. Accordingly, we overrule the first assignment of error.

## VI. NATURAL LAW RIGHTS

{¶18} In his second assignment of error, D.F. contends that the "imposition of registration" on him "violates the natural law rights afforded to him under the Ohio Constitution, Article I, Section 1." D.F. asserts that an exercise of police power is only valid if it bears a real and substantial relation to the public health, safety, morals, or general welfare and is not unreasonable or arbitrary. He asserts that statutes requiring children to register as sex offenders do not meet this standard and that "registering children as sex offenders is certain to interfere with their natural law rights" to privacy, to acquire and protect property, to pursue an occupation, to a favorable reputation, and to happiness and safety as argued under his first assignment of error. He asserts that *State v. Williams*, 88 Ohio St.3d 513, 728 N.E.2d 342 (2000), does not control the outcome of this assignment of error.

{¶19} Ohio Constitution, Article I, Section 1 states: "All men are, by nature, free and independent, and have certain inalienable rights, among which are those of enjoying

and defending life and liberty, acquiring, possessing, and protecting property, and seeking and obtaining happiness and safety."

**{¶20}** In *Williams*, the Supreme Court of Ohio was "asked to determine," among other things, whether a prior version R.C. Chapter 2950 violated "rights enumerated in Section 1, Article I of the Ohio Constitution." *Williams* at 516. The court explained that in the cases before it, the courts of appeals "held that R.C. Chapter 2950 is an unconstitutional law in violation of Section 1, Article I of the Ohio Constitution." *Id.* at 521. These decisions derived "from the conclusion that R.C. Chapter 2950 impinges upon the natural law rights of privacy, favorable reputation, the acquisition of property, and the ability to pursue an occupation." *Id.*

**{¶21}** *Williams* first addressed "whether Section 1, Article I of the Ohio Constitution is a self-executing provision that provides such protection, or whether reliance upon this constitutional provision without other enabling legislation is misplaced." *Id.* The court stated that "[t]he language of Section 1, Article I is a broad statement limiting the power of our state government to interfere with certain rights of individuals" and that "[t]he question posited is whether the words of Section 1, Article I are so broad as to be aspirational ideals that require enabling legislation to be practically applied, or whether the language is sufficiently definite to make Section 1, Article I self-executing." *Id.* The court explained that

> [a] constitutional provision is self-executing when it is complete in itself and becomes operative without the aid of supplemental or enabling legislation. Likewise, a constitutional provision is not self-executing if its language, duly construed, cannot provide for adequate and meaningful enforcement of its terms without other legislative enactment. Stated more succinctly, the words of a constitutional provision must be sufficiently precise in order to provide clear guidance to courts with respect to their application if the provision is to be deemed self-executing.

(Citations omitted.)  *Id.*

**{¶22}** The court held that Ohio Constitution, Article I, Section 1 was not self-executing, stating:

>        Section 1, Article I of the Ohio Constitution describes rights inherent in the individual to be free and happy—rights that the government is to hold inalienable. Yet, we have never held rights of property or rights of liberty to be completely free from government restraint.  Accordingly, the "natural law" rights outlined in Section 1, Article I will, at times, yield to government intrusion when necessitated by the public good.  The issue we must decide is whether this language gives us a methodology to determine how to accord protection to these rights.

>        "Natural law" rights, in and of themselves, *are of no legal force*. Rather, *it is the laws enacted by legislatures that define the rights of the individual*.  As noted by the United States Supreme Court, if "the Legislature of the Union, or the Legislature of any member of the Union, shall pass a law, within the general scope of their constitutional power, the Court cannot pronounce it to be void, merely because it is, in their judgment, contrary to the principles of natural justice.  The ideas of natural justice are regulated by no fixed standard."  *Calder v. Bull* (1798), 3 U.S. (3 Dall.) 386, 399, 1 L.Ed. 648, 654 (Iredell, J., concurring).  *In order for a court of law to enforce any right, there must be a fixed standard to ensure equal and uniform application*.

>        * * * [T]he language in Section 1, Article I of the Ohio Constitution *is not an independent source of self-executing protections*.  Rather, it is a statement of fundamental ideals upon which a limited government is created.  But *it requires other provisions of the Ohio Constitution or legislative definition to give it practical effect*. This is so because *its language lacks the completeness required to offer meaningful guidance for judicial enforcement*.

>        * * * *It is the absence of a precise standard subject to judicial enforcement that precludes Section 1, Article I from being a self-executing provision*.

>        Section 1, Article I declares that all men are "free and independent," and that the rights of life, liberty, property, and happiness are inalienable.  This constitutional provision, however, *does not indicate how these rights are subject to judicial enforcement*.  All of the aforementioned guarantees are not inalienable in the most strict sense of the term. It is beyond doubt that the rights of property can be infringed upon through, for example, the power

of eminent domain. Both life and liberty are subject to the criminal laws of this state. Happiness is such a broad concept that no court could ever adequately protect every individual's happiness without transgressing the happiness of another. *We find the standards for judicial enforcement of these rights not in Section 1, Article I, but in other provisions of the Ohio Constitution, laws passed by the General Assembly, and in the mandates of the United States Constitution.*

(Citations omitted and emphasis added.) *Id.* at 523-524.

**{¶23}** The court went on to explain that "[e]ven if, however, Section 1, Article I was self-executing, the General Assembly has not violated its declaration." *Id.* at 524. The court stated that "[i]n reviewing legislation that impacts the rights guaranteed by Section 1, Article I, the legislation will be upheld if it bears a real and substantial relation to the public health, safety, morals, or general welfare, and if the legislation is not arbitrary or unreasonable." *Id.* The court stated that former R.C. Chapter 2950 was "reasonable legislation because, although it impacts the lives of convicted sex offenders, the statute addresses legitimate governmental interests without a detrimental effect on individual constitutional rights." *Id.* at 526. The court explained that former R.C. Chapter 2950 did not infringe on a convicted sex offender's right to privacy, to acquire or protect property, to pursue to an occupation, or to a favorable reputation. *Id.* at 524-527. The court concluded that former "R.C. Chapter 2950 does not violate the rights enumerated in Section 1, Article I of the Ohio Constitution." *Id.* at 527.

**{¶24}** Contrary to what D.F. asserts, *Williams* controls our resolution of the second assignment of error. D.F. emphasizes the fact that *Williams* involved "the previous iteration of the sex offense registration statutory scheme, H.B. 180, which was specifically found to be not punitive" and that the current scheme has been found to be punitive. D.F. claims that "[a]bsent the underlying premise that registration is punishment," *Williams*

"could not conclude that a registrant's natural law rights were interfered with[.]" D.F. also criticizes *Williams* on the grounds that it failed to consider "the cumulative network of laws meant to suppress registrants," "fundamentally misunderstood what life as a registrant is like, particularly for children," and contains a flawed analysis on the issue of privacy. However, these arguments do not address *Williams*'s holding that Ohio Constitution, Article I, Section I is not self-executing. Rather, these arguments focus on *Williams*'s analysis of why, even if that constitutional provision was self-executing, the General Assembly did not violate its declaration with the enactment of former R.C. Chapter 2950.

**{¶25}** Once *Williams* concluded Ohio Constitution, Article I, Section I is not self-executing, it could have ended its analysis of whether former R.C. Chapter 2950 violated that constitutional provision because "a constitutional provision alone has no force unless it is self-executing." *State v. Jackson*, 102 Ohio St.3d 380, 2004-Ohio-3206, 811 N.E.2d 68, ¶ 22. "As an intermediate appellate court * * * we are bound to follow Ohio Supreme Court decisions." *State v. Richardson*, 4th Dist. Pickaway No. 05CA29, 2006-Ohio-386, ¶ 16. Because Ohio Constitution, Article I, Section 1 "is not a self-executing right subject to judicial enforcement," D.F.'s second assignment of error, which is based solely on that constitutional provision, must fail. *Cooper v. Jones*, 4th Dist. Jackson No. 05CA7, 2006-Ohio-1770, ¶ 36 (contract-related cause of action based on Ohio Constitution, Article I, Section 1 failed for this reason). Accordingly, we overrule the second assignment of error.

## VII. IRREBUTTABLE PRESUMPTION

**{¶26}** In his third assignment of error, D.F. contends that the "imposition of registration" on him "violates his right to due process because it creates an irrebuttable presumption that he is at a high risk to reoffend." D.F. maintains that "Ohio's sex offender

registration and notification statutes violate due process when applied to children because the statutes presume that a child is likely to reoffend. He asserts that a legislative choice based on a categorical determination violates due process when it creates an irrebuttable presumption that a child is as morally culpable as an adult who committed the same crime. He further asserts that in *In re J.B.*, 630 Pa. 408, 107 A.3d 1 (2014), the Pennsylvania Supreme Court "struck down their state's juvenile sex offender registry scheme because the statute contained an irrebuttable presumption," that "Ohio's classification scheme contains a similar statement in R.C. 2950.02(A)(2)," and that Ohio's sex offender registration scheme is unconstitutional as applied to children "for the same reasons set forth in *J.B.*"

**{¶27}** "Due-process rights are applicable to juveniles through the Due Process Clause of the Fourteenth Amendment to the United States Constitution and Article I, Section 16 of the Ohio Constitution." *D.S.*, 146 Ohio St.3d 182, 2016-Ohio-1027, 54 N.E.3d 1184, ¶ 28. "What process is due depends on considerations of fundamental fairness in a particular situation." *Id.* " ' "Permanent irrebuttable presumptions have long been disfavored under the Due Process Clauses of the Fifth and Fourteenth Amendments,["] especially when they are "not necessarily or universally true in fact, and when the state has reasonable alternative means of making the crucial determination." ' " *Johnson v. Adams*, 18 Ohio St.3d 48, 50, 479 N.E.2d 866 (1985), quoting *Hall v. Rosen*, 50 Ohio St.2d 135, 142, 363 N.E.2d 725 (1977) (Brown, J., dissenting), quoting *Vlandis v. Kline*, 412 U.S. 441, 446 and 452, 93 S.Ct. 2230, 37 L.Ed.2d 63 (1973). " '[I]rrebuttable presumptions' are invalid only if the fact presumed is an essential constitutional or statutory predicate to government action." *Granzow v. Bur. of Support of Montgomery*

*Cty.*, 54 Ohio St.3d 35, 37, 560 N.E.2d 1307 (1990), citing *Williams v. Dollison*, 62 Ohio St.2d 297, 299, 405 N.E.2d 714 (1980).

**{¶28}** In *J.B.*, the Supreme Court of Pennsylvania considered the constitutionality of provisions of that state's Sex Offender Registration and Notification Act ("SORNA") as applied to juveniles. *J.B.* at 410-411. SORNA required lifetime registration for juvenile offenders who were adjudicated delinquent in Pennsylvania or in another jurisdiction or foreign country as a consequence of having committed an offense similar to one which would require the individual to register if the offense was committed in Pennsylvania. *Id.* at 415-416. The soonest a court could terminate the registration requirement was 25 years after "the individual was adjudicated delinquent, excluding time spent under the supervision of the court," and a court could only do so if the individual met certain statutory requirements. *Id.* at 419, citing 42 Pa. Consol. Stat. 9799.17(a). SORNA included a specific legislative finding that "[s]exual offenders pose a high risk of committing additional sexual offenses and protection of the public from this type of offender is a paramount governmental interest." *Id.* at 413, quoting 42 Pa. Consol. Stat. 9799.11(a)(4).

**{¶29}** The Supreme Court of Pennsylvania held "that the application of SORNA's current lifetime registration requirements upon adjudication of specified offenses violates juvenile offenders' due process rights by utilizing an irrebuttable presumption." *Id.* at 438. In making this determination, the court considered "whether juvenile offenders have asserted an interest protected by the due process clause that is encroached by an irrebuttable presumption, whether the presumption is not universally true, and whether a reasonable alternative means exists for ascertaining the presumed fact." *Id.* at 432. The court acknowledged that "the right to reputation" is "absent from the federal constitution."

*Id.* However, it found that "SORNA registration requirements, premised upon the presumption that all sexual offenders pose a high risk of recidivating, impinge upon juvenile offenders' fundamental right to reputation as protected under the Pennsylvania Constitution," *id.* at 433-434, because

> SORNA explicitly declares that sexual offenders, including juvenile offenders, "pose a high risk of committing additional sexual offenses and protection of the public from this type of offender is a paramount governmental interest." 42 Pa.C.S. § 9799.11(a)(4). Indeed, a primary purpose of SORNA is to inform and warn law enforcement and the public of the potential danger of those registered as sexual offenders. Moreover, even without this language, the common view of registered sexual offenders is that they are particularly dangerous and more likely to reoffend than other criminals. * * * As argued by the Juveniles and found by the trial court, registration also negatively affects juvenile offenders['] ability to obtain housing, schooling, and employment, which in turn hinders their ability to rehabilitate.

*Id.* at 433. The court also found that "the Juveniles have asserted a constitutionally protected interest in their reputation that has been encroached by the use of an irrebuttable presumption" because

> SORNA does not provide juvenile offenders a meaningful opportunity to challenge the presumption. While a juvenile offender is provided an opportunity to be heard regarding the adjudication of delinquency for the relevant crime, the delinquency hearing does not consider the relevant question of whether the juvenile offender is at risk of reoffense. Instead, the juvenile offender is automatically designated a sexual offender solely as a result of the delinquency adjudication * * *, with the attendant presumption of a high risk of reoffense. Moreover, we reject the suggestion that a * * * hearing twenty-five years in the future, only upon perfect compliance with the registration requirements, provides an opportunity to be heard on the question of likelihood of recidivating. * * * [A] process which eliminates consideration of the paramount factor, in this case the likelihood of committing additional sexual offenses, does not provide procedural due process, as it blocks the opportunity to be heard on the relevant issue.

*Id.* at 434. The court found "that SORNA'S presumption that sexual offenders pose a high risk of recidivating is not universally true when applied to juvenile offenders," who

"exhibit low levels of recidivism (between 2-7%)." *Id.* at 434-435. The court also found that there was a reasonable alternative means for ascertaining which juvenile offenders pose a high risk of recidivating—"individualized risk assessment, as used in other provisions of SORNA." *Id.* at 438.

**{¶30}** R.C. 2950.02(A)(2) states: "The general assembly hereby determines and declares that it recognizes and finds * * * [s]ex offenders and child-victim offenders pose a risk of engaging in further sexually abusive behavior even after being released from imprisonment, a prison term, or other confinement or detention, and protection of members of the public from sex offenders and child-victim offenders is a paramount governmental interest." Unlike Pennsylvania's SORNA, R.C. 2950.02(A)(2) does not characterize the risk of reoffending as "high." *See* 42 Pa. Consol. Stat. 9799.11(a)(4).

**{¶31}** Even if R.C. 2950.02(A)(2) created a presumption of a high risk to reoffend, and even if that fact was an essential constitutional or statutory predicate to government action, unlike the juvenile offenders in *J.B.*, a child classified under R.C. 2152.83(A)(1) has a meaningful opportunity to rebut the presumption. In *J.B.*, the juvenile offenders were automatically subject to lifetime registration and only had a possibility of termination of registration after 25 years if they met specific requirements. *J.B.* at 415-416, 419. In contrast, while a juvenile court in Ohio must initially classify a child who meets the requirements of R.C. 2152.83(A)(1) as a JOR, the court has discretion to select the tier-classification, *see* R.C. 2152.83(A)(2), which determines the child's duties and their duration as discussed above. Nothing in R.C. 2950.02(A)(2) prevents a child from asserting that he or she poses a low risk of reoffending and therefore should be classified at the lowest tier. This is precisely what D.F. did in this case.

**{¶32}** Moreover, JORs classified under R.C. 2152.83(A)(1) have opportunities for reclassification and can seek declassification much sooner than the juvenile offenders in *J.B.* The juvenile judge can reclassify tier II JORs, like D.F., and tier III JORs after the completion of disposition, R.C. 2152.84(A), and can declassify any tier of JOR as soon as three years after the completion-of-disposition hearing, R.C. 2152.85(B)(1). R.C. 2152.84(A)(1) specifically mandates that the juvenile judge "determine the risks that the child might re-offend" during the completion-of-disposition hearing. And R.C. 2152.85(C) mandates that the judge consider "all relevant factors" in ruling on a petition for reclassification or declassification under that section, which would include the risk of reoffending.

**{¶33}** Because any presumption of a high risk to reoffend is a rebuttable one, we reject D.F.'s contention that the imposition of registration requirements on him violates his right to due process. *See generally In re R.A.H.*, 8th Dist. Cuyahoga No. 101936, 2015-Ohio-3342, ¶ 26-28, *reversed in part on other grounds and appeal dismissed in part*, 148 Ohio St.3d 531, 71 N.E.3d 1015, 2016-Ohio-7592 (rejecting contention that R.C. 2152.83(A) violates due process by creating a nonrebuttable presumption of future risk to the community because "[t]he trial court has discretion in deciding which tier applies to the 16- or 17-year-old sex offender, who can present evidence at a hearing in support of a lower tier. * * * Moreover, the classification can be reduced once the juvenile completes disposition * * * and can be eliminated three years after final disposition."); *In re D.D.*, 5th Dist. Stark No. 2015CA0043, 2015-Ohio-3999, ¶ 23-26 (rejecting contention that R.C. 2152.83(A) violates fundamental fairness, relying on the due process analysis in *In re R.A.H.*). Accordingly, we overrule the third assignment of error.

## VIII.  CONCLUSION

{¶34} Having overruled the assignments of error, we affirm the juvenile court's judgment.

JUDGMENT AFFIRMED.

## JUDGMENT ENTRY

It is ordered that the JUDGMENT IS AFFIRMED and that appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Jackson County Common Pleas Court, Juvenile Division to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J. & Abele, J.: Concur in Judgment and Opinion.


For the Court



BY: _____
        Michael D. Hess, Judge




### NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**